IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **LISA YOUNG o/b/o** : | | **CIVIL ACTION** |
| **J.C. (MINOR),** : | | |
| Plaintiff, : | | |
|  : | | |
| v. : | | |
|  : | | |
| **JO ANNE E. BARNHART,** : | | |
| **COMMISSIONER OF SOCIAL SECURITY** : | | |
| Defendant : | | **NO. 05-5226** |

**MEMORANDUM AND ORDER**

PRATTER, J.                                                                                                        JANUARY 17, 2007

This is an action under 42 U.S.C. §§ 405(g) and 1383(c)(3) to review the decision of the Commissioner of Social Security ("Commissioner") denying the claim of Plaintiff J.C., by and through her mother, Lisa Young, for supplemental social security income ("CSSI"). After filing a request for review of the Administrative Law Judges's ("ALJ") decision that she was not disabled under the Social Security Act, J.C. submitted additional evidence to the Appeals Council. The Appeals Council made the additional evidence part of the record and subsequently denied J.C.'s request for review.

J.C. argues that the ALJ's finding of only a "less than marked" impairment in the domain of interacting and relating to others was not supported by substantial evidence. Relying on the additional evidence, which the ALJ did not consider, J.C. asks the Court to reverse the ALJ's decision and grant CSSI benefits. The Commissioner responds that the determination was supported by substantial evidence, and the new evidence should not be considered by this Court.

United States Magistrate Judge Timothy R. Rice filed a Report and Recommendation recommending that the instant matter be remanded for further review to consider whether the

new evidence changes the ALJ's determination of J.C.'s limitation in the domain of interacting and relating to others, and for an explanation of the ALJ's adverse credibility finding.  After conducting a review pursuant to 28 U.S.C. 636(b), and for the reasons discussed below, the Court adopts the Report and Recommendation.

**BACKGROUND**

    **A.**    **Procedural History**

On July 16, 2003, Ms. Young applied for CSSI benefits on behalf of J.C.  On December 17, 2003, the state agency denied her application, and J.C. requested review by an ALJ.  On August 19, 2004, the ALJ heard testimony from J.C., Lisa Young and J.C.'s therapist, Diane Townes.  On September 24, 2004, prior to the ALJ's decision, J.C.'s counsel submitted evidence of J.C.'s September 12, 2004 hospitalization for suicidal thoughts.  This evidence was marked as an exhibit for the ALJ's consideration.  Six days later, the ALJ denied J.C.'s claim.

After filing a request for review by the Appeals Council on April 14, 2005, J.C. submitted additional evidence, which the Appeals Council made part of the administrative record.[1]  On August 4, 2005, the Appeals Council denied J.C.'s request for review, rendering the ALJ's determination the final decision of the Commissioner.  Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001) ("If the Appeals Council denies the request for review, the ALJ's decision is the Commissioner's final decision.").

---

[1] Although previously filed them with the ALJ on September 24, 2004, J.C. included in this submission the intake assessment and consultation notes from her September 12, 2004 hospitalization.

**B.     Evidence Before the ALJ**

J.C. was born on September 19, 1991 and was 13 years old at the time of the ALJ's decision.  J.C.'s father has been incarcerated for most of her life, and her mother, Lisa Young, has been physically disabled since 1988 when she suffered two aneurysms and a stroke, losing mobility on the left side of her body.  As a result, Ms. Young is largely wheelchair-bound and receives Social Security disability benefits.

On June 13, 2003, J.C. began attending Alternatives to Placement, where she was examined and began receiving therapy from Dr. Phyllis Pole and medication management from Dr. Cecil Harris.  An evaluation prepared at Alternatives to Placement on June 13, 2003 noted that J.C.'s problems included anger, lying, sneaking out of the home, sexual activity beginning at the age of 9, hyperactivity, short attention span, poor impulse control, poor self esteem and poor social skills.  Dr. Pole diagnosed J.C. with Opposition Defiant Disorder ("ODD")[2] and adolescent antisocial behavior, and Dr. Harris diagnosed J.C. with attention deficit hyperactivity disorder ("ADHD").[3]

---

[2] "Opposition defiant disorder" is "a type of disruptive behavior disorder characterized by a recurrent pattern of defiant, hostile, disobedient, and negativistic behavior directed towards those in authority, including such actions as defying the request or rules of adults, deliberately annoying others, arguing, spitefulness, and vindictiveness that occur much more frequently than would be expected on the basis of age and development stage."  Dorland's Illustrated Medical Dictionary 550 (30th ed. 2003).

[3] "Attention deficit hyperactivity disorder" is a childhood mental disorder characterized by inattention, by hyperactivity and impulsivity, or by both types of behavior.  The behavior interferes with academic, social, or work functioning.  Dorland's Illustrated Medical Dictionary 547 (30th ed. 2003).

On August 18, 2003, Lisa Matthews, J.C.'s school teacher, reported concern about J.C.'s social and emotional growth and behavior over the previous year. In a letter to Ms. Young, Ms. Matthews noted inappropriate behavior, such as speaking disrespectfully to authority figures, refusing to do what adults asked her to do, receiving several detentions, name calling, teasing and fighting with other students, and engaging in sexual activity.

Throughout the following school year, J.C.'s behavior prompted several notes from school authorities reporting various angry, aggressive, destructive and disrespectful acts on the part of J.C. On June 22, 2004, after making threats about wanting to hurt herself, reaching for kitchen knives and writing a suicide note, J.C. was admitted to the Belmont Center for Comprehensive Treatment. At the time of her admission, J.C.'s Global Assessment of Functioning ("GAF")[4] score was 30.[5] On July 4, 2004, at the time of J.C.'s discharge to a partial hospitalization program, her GAF score was 50, denoting ongoing serious symptoms.[6]

### C.   Additional Evidence Submitted to the Appeals Council

---

[4] "GAF" scores reflect the mental health specialist's assessment on a particular day of the severity of a patient's mental health, and are necessarily based on the patient's state of mind and self-reported symptoms. Nevertheless, the scores constitute an independent medical evaluation of the patient's subjective complaints.

[5] GAF scores in the 21 to 30 range indicate behavior that is considerably influenced by delusions or hallucinations, serious impairment in communication or judgment, or the inability to function in almost all areas. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

[6] GAF scores in the 41 to 50 range indicate serious symptoms, such as suicidal ideation, or any serious impairment in social, occupational, or school functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

On April 14, 2005, J.C.'s counsel submitted additional evidence to the Appeals Council, including evidence of J.C.'s September 12, 2004 hospitalization, which previously had been submitted to the ALJ.[7]  The remainder of the additional evidence included:

- An evaluation produced by The Consortium, Inc. after J.C. underwent a comprehensive biopsychosocial evaluation on August 12, 2004.  The evaluation notes that J.C. behaved inappropriately, oppositionally and impulsively; heard voices in her room; had been sexually active since the age of 10; and had been suspended from school multiple times for fighting and for being disrespectful to teachers and other authority figures.  The evaluation also noted that J.C. had been diagnosed as having ADHD, posttraumatic stress disorder,[8] and schizophrenia,[9] with a GAF score of 30.

- A report by Northeast Treatment Centers covering the period from April 22, 2004 to August 22, 2004 described J.C. as disruptive and disrespectful in class, having difficulties focusing, and physically and verbally aggressive when angered.

---

[7] J.C. apparently resubmitted this evidence to the Appeals Council because the ALJ had not considered it.

[8] "Posttraumatic stress disorder" is "an anxiety disorder caused by exposure to an intensely traumatic event; characterized by reexperiencing the traumatic event in recurrent intrusive recollections, nightmares, or flashbacks, by avoidance of trauma-associated stimuli, by generalized numbing of emotional responsiveness, and by hyper-alertness and difficulty in sleeping, remembering, or concentrating." Dorland's Illustrated Medical Dictionary at 550.

[9] "Schizophrenia" is a mental disorder characterized by disturbances in form and content of thought, mood, sense of self and relationship to external world, and behavior. Dorland's Illustrated Medical Dictionary at 1664.

- An initial assessment and evaluation performed on August 27, 2004 by the Thomas Jefferson University Hospital Department of Psychiatry and Human Behavior described J.C. to be of above average intelligence but to have restless, impulsive and "destructible" behavior. The assessment also notes that J.C. was defiant toward her mother, had limited anger management and low self-esteem, and was diagnosed with ADHD and ODD, with a GAF score of 55. [10]

- Letters from J.C.'s school principal and teachers, dated March 29, 2004 and November 18, 2004, described J.C. as verbally abusive to teachers, disrespectful of rules, and physically abusive of other students. [11]

- Journal entries written by J.C. from January 2003 to February 2004 relating violent and angry thoughts of wanting to hurt people, of being "fed up," and of hating her peers.

**STANDARD OF REVIEW**

The Commissioner's denial of benefits will be disturbed only if it is not supported by substantial evidence or if it is based upon legal error. Schaudeck v. Commissioner of Soc. Sec. Admin., 181 F.3d 429, 431 (3d Cir. 1999).

---

[10] GAF scores in the 51 to 60 range indicate moderate impairment in social or occupational functioning. American Psychiatric Ass'n, Diagnostic and Statistical Manual of Mental Disorders 34 (4th ed. 2000).

[11] The letter of November 18, 2004 post-dates the ALJ's decision and, therefore, arguably does not relate to the period at issue. See Szubak v. Sec'y of Health & Human Servs., 745 F.3d 831, 833 (3d Cir. 1984) (new evidence must relate to a time period for which benefits were denied and cannot be evidence of a later-acquired disability or subsequent deterioration of a previously non-disabling condition). This letter, however, is not necessary to the Court's determination. The weight of the other evidence supports remand for further review.

"Substantial evidence" is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Richardson v. Perales, 402 U.S. 389, 401 (1971); Hartranft v. Apfel, 181 F.3d 358, 360 (3d Cir. 1999). The standard is "more than a mere scintilla," Richardson, 402 U.S. at 401; Plummer v. Apfel, 186 F.3d 422, 427 (3d Cir. 1999), but less than a preponderance of the evidence, Dobrowolsky v. Califano, 606 F.2d 403, 406 (3d Cir. 1979). The district court may not conduct a de novo review of the Commissioner's decision or re-weigh the record evidence. Monsour Medical Center v. Heckler, 806 F.2d 1185, 1190 (3d Cir. 1986).

The district court may affirm, modify, or reverse the Commissioner's decision based only on the record before the ALJ. Matthews v. Apfel, 239 F.3d 589, 592 (3d Cir. 2001). Remand is warranted where additional evidence has been submitted that is new and material, and the plaintiff has demonstrated good cause for its late submission. Id. In addition, remand is appropriate on issues not raised by the plaintiff.

Magistrate Judge Rice prepared a Report and Recommendation in this matter. Pursuant to 28 U.S.C. § 636(b)(1)(C), any party may serve and file written objections to such proposed findings and recommendations within ten days after being served with a copy. 28 U.S.C. § 636(b)(1)(C). In the instant case, no objections were filed by either party. Therefore, the Court is not obligated to conduct a de novo review. Thomas v. Arn, 474 U.S. 140, 149-50 (1985). Nonetheless, the Court may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge. Id. [2][1]

---

[12] If objections are submitted, the Court reviews de novo those portions of the report or specified proposed findings or recommendations to which objection is made. 28 U.S.C. § 636(b)(1)(C). Conversely, where a party has not filed specific objections to factual findings by the magistrate judge, there is no requirement that the district court review those findings de novo.

**DISCUSSION**

    **A.**    **Applicable Law**

To determine whether a child under the age of 18 is disabled for the purpose of receiving CSSI benefits, the ALJ considers the following, in sequence: (1) whether the child is working, i.e., engaged in substantial gainful activity, 20 C.F.R. § 416.972; (2) whether the child has a medically determinable "severe" impairment or combination of impairments, id. at § 416.924(c); and (3) whether the child's impairment or combination of impairments meets, medically equals, or functionally equals the severity of a listed impairment, id. at § 416.924(d).

A child's impairment functionally equals a "listing-level" impairment if it causes a

---

Thomas v. Arn, 474 U.S. 140, 149-50 (1985). As the Supreme Court explained in Thomas:

> The statute [28 U.S.C. § 636] does not on its face require any review at all, by either the district court or the court of appeals, of any issue that is not the subject of an objection. . . . This omission does not seem to be inadvertent, . . . [n]or does petitioner point to anything in the legislative history of the 1976 amendments mandating review under some lesser standard. We are therefore not persuaded that the statute positively requires some lesser review by the district court when no objections are filed. . . . It does not appear that Congress intended to require district court review of a magistrate's factual or legal conclusions, under a de novo or any other standard, when neither party objects to those findings.

Id. However, most courts have held that the absence of objections does not eliminate the district court's obligation to determine whether to accept the recommendation. See, e.g., McCarthy v. Manson, 714 F.2d 234, 236 n.2 (2d Cir. 1983) (citing Mathews v. Weber, 423 U.S. 261, 271 (1976)); see also Conley v. Crabtree, 14 F. Supp. 2d 1203, 1204 (D. Or. 1998) (holding that when no timely objection is filed, the court need only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation of the Magistrate).

"marked" limitation in two domains of functioning, or causes an "extreme" limitation in one domain of functioning. 20 C.F.R. § 416.926a(d). A limitation is considered "marked" if the impairment "seriously interferes" with the ability to independently initiate, sustain or complete activities. Id. at § 416.926a(e)(2). It is a limitation that is "more than moderate" but "less than extreme." Id. [13]

The domains, or categories, reviewed under this standard are: (1) acquiring and using information; (2) attending and completing tasks; (3) interacting and relating with others; (4) moving about and manipulating objects; (5) caring for oneself; and (6) health and physical well-being. Id. at § 416.926a(b)(1)(i) - (iv). These "domains" are broad areas of functioning intended to capture all of what a child can or cannot do. Id. at § 416.926a(b)(1).

### B. Findings of the ALJ

The ALJ determined that J.C. was not working and had a "marked" limitation in the domain of caring for herself.[14] However, the ALJ found only a "less than marked" limitation in the domain of interacting and relating to others, and no "marked" impairment in any other domain. Thus, concluded the ALJ, J.C.'s impairments functionally did not equal a listing-level impairment and, therefore, J.C. was not disabled within the meaning of the Social Security Act. Without explanation, the ALJ also found that J.C. and Ms. Young were "not fully credible." The ALJ did not consider the evidence of J.C.'s September 12, 2004 hospitalization, which was

---

[13] An "extreme" limitation is defined as very seriously interfering with the ability to independently initiate, sustain or complete activities. 20 C.F.R. § 416.926a(e)(3).

[14] The ALJ also determined that J.C. had ODD and impulse control disorder, which the ALJ characterized as "severe impairments."

submitted on September 24, 2004, prior to the ALJ's September 30, 2004 decision.

### C. New Evidence

J.C. contends that the ALJ's finding of only a "less than marked" limitation in the domain of interacting and relating to others is not supported by substantial evidence. Asserting that the Court may properly consider the additional evidence submitted to the Appeals Council, J.C. seeks reversal of the ALJ's determination.

A claimant may submit to the Appeals Council "new and material" evidence that relates to the period on or before the date of the ALJ's hearing decision. See 20 C.F.R. § 404.970(b).[15] "New" evidence must not be merely cumulative of evidence already on the record. It must also be "material." Evidence is "material" if it is relevant, probative, and related to "the period on or before the date of the administrative law judge's hearing decision," and there is a reasonable probability that it would have changed the outcome of the Commissioner's determination. 20 C.F.R. § 404.970(b); Szuback v. Sec'y of Health & Human Servs., 745 F.2d 831, 833 (3d Cir.

---

[15] The applicable subsection of the regulation provides:

> If new and material evidence is submitted, the Appeals Council shall consider the additional evidence only where it relates to the period on or before the date of the administrative law judge hearing decision. The Appeals Council shall evaluate the entire record including the new and material evidence submitted if it relates to the period on or before the date of the administrative law judge hearing decision. It will then review the case if it finds that the administrative law judge's action, findings, or conclusion is contrary to the weight of the evidence currently of record.

20 C.F.R. § 404.970(b).

1984).

The Appeals Council will grant review only if it finds that the ALJ's decision "is contrary to the weight of the evidence currently of record." Id. If the Appeals Council denies review, the district court may not review the Appeals Council decision. "No statutory provision authorizes the district court to make a decision on the substantial evidence standard based on the new and material evidence never presented to the ALJ. Instead, the [Social Security] Act gives the district court authority to remand the case to the Commissioner, but only if the claimant has shown good cause why such new and material evidence was not presented to the ALJ." Matthews, 239 F.3d at 594; 42 U.S.C. § 405(g).

Here, the additional evidence submitted to the Appeals Council was both new and material. In particular, it included evidence of a second hospitalization for mental health reasons. In her evaluation of the evidence, the ALJ noted that other than J.C.'s first hospitalization at the Belmont Center in June 2004, "[t]here is no evidence of any other hospitalization for mental health reasons." This demonstrates that the ALJ did not consider J.C.'s September 2004 hospitalization. The remainder of the additional evidence, which was not presented to the ALJ, documents changes in J.C.'s mental health and her ongoing[16] behavioral and emotional difficulties.

This additional evidence is new and not merely cumulative because it demonstrates the different aspects of J.C.'s impairments and changes in her mental health functioning. J.C. was

---

[16] The Commissioner argues that after J.C.'s hospitalization in June 2004, she seemed to be stable and improving. The new evidence from August and September 2004 demonstrates that, on the contrary, J.C.'s condition did not improve.

hospitalized a second time for suicidal thoughts, and her GAF score dropped to 30 on two occasions. The ALJ did not consider this evidence in making her determination. The additional evidence is also material because it relates to J.C.'s mental health condition, is probative of the severity of her condition, and relates to the period at issue. Moreover, there is a reasonable probability that this evidence should change the outcome of the Commissioner's decision. In particular, the new evidence indicates significant impairment in the domain of interacting and relating to others,[17] a domain in which the ALJ found a "less than marked" impairment. If the ALJ had found a "marked" or "extreme" impairment in this domain, J.C.'s impairments would have functionally equaled a listing-level impairment and, therefore, would have constituted a disability within the meaning of the Social Security Act.

There is a reasonable probability that, had the ALJ considered this evidence, her determination of J.C.'s limitation in the domain of interacting and relating to others would have changed from "less than marked" to "marked" or "extreme." For example, J.C.'s journal entries from 2003 and 2004 reveal feelings of hating her peers and wanting to hurt people. The second hospitalization and lowered GAF scores in August and September 2004 indicate increasingly serious impairments in communication and social functioning. The school and psychiatric reports from the fall of 2004 document multiple school suspensions for fighting and defiance toward teachers, and anger, physical aggressiveness toward authorities and physical abuse of other students. Therefore, the additional evidence was pertinent and properly submitted to the

---

[17] In general, "interacting" means initiating and responding to exchanges with other people, for practical or social purposes, and relating to other people means forming intimate relationships with family members and with friends your age, and sustaining them over time. 20 C.F.R. § 416.926a(i)(1)(i)-(ii).

Appeals Council.

Nonetheless, since the Appeals Council denied review, the ALJ's decision is the final decision of the Commissioner, and the Court may not consider evidence that was not before the ALJ in reviewing her decision. The Court may, however, remand the case to the Commissioner if "the claimant has shown good cause why such new and material evidence was not presented to the ALJ." Matthews, 239 F.3d at 594.

Such "good cause" exists here. First, the evidence of J.C.'s second hospitalization was presented to ALJ, who simply failed to consider it. Second, Ms. Young's physical disability prevented her from discovering the school records and journal entries in time to make them part of the original record. Finally, it is reasonable to conclude that the medical reports from August and September 2004 were not prepared or ready to submit in advance of the ALJ's decision on September 30, 2004.

Therefore, because the additional evidence submitted by J.C. was new and material, and good cause exists for its late submission, the matter is properly remanded for further consideration by the ALJ. See 42 U.S.C. § 405(g).

### D.     The ALJ's Credibility Determination

Although the fact-finder's credibility determinations are normally entitled to deference, Cao v. United States, 407 F.3d 146, 152 (3d Cir. 2005), the ALJ is required to explain the basis for an adverse credibility determination, Cress v. Heckler, 579 F. Supp. 644, 645 (E.D. Pa. 1984). The reasons for credibility findings must be substantial and bear a legitimate nexus to the finding, e.g., based on inconsistent statements, contradictory evidence, inherently improbable

testimony, or the like.  <u>Cao</u>, 407 F.3d at 152; <u>accord</u> <u>St. Georges Warehouse, Inc. v. NLRB</u>, 420 F.3d 294, 298 (3d Cir. 2005) (ALJ credibility determination should not be reversed unless "inherently incredible or patently unreasonable" as long as ALJ considers all relevant factors and explains her decision).

In the instant case, the ALJ summarily concluded that J.C. and her mother, Ms. Young, were not fully credible, but failed to explain her finding in this record.  Since J.C. did not raise this issue, it will be remanded.

**CONCLUSION**

For the foregoing reasons, the Court adopts Magistrate Judge Rice's Report and Recommendation in its entirety.  Accordingly, this matter is remanded to the Commissioner pursuant to 42 U.S.C. 405(g) for further review to consider whether the new evidence changes the ALJ's determination and for an explanation of the ALJ's adverse credibility finding.  An appropriate order consistent with this Memorandum follows.

                BY THE COURT:

                S/Gene E.K. Pratter
                GENE E. K. PRATTER
                United States District Judge

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LISA YOUNG o/b/o<br>J.C. (MINOR),<br>     Plaintiff,<br><br>v.<br><br>JO ANNE E. BARNHART,<br>COMMISSIONER OF SOCIAL SECURITY<br>     Defendant | :<br>:<br>:<br>:<br>:<br>:<br>:<br>:<br>: | CIVIL ACTION<br><br><br><br><br><br><br><br>NO. 05-5226 |

## ORDER

AND NOW, this 17th day of January, 2007, upon consideration of Plaintiff's Motion for Summary Judgment (Docket No. 10), Defendant's Motion for Summary Judgment (Docket No. 11), Plaintiff's Reply (Docket No. 12) and the Report and Recommendation of United States Magistrate Judge Timothy R. Rice (Docket No. 14), it is hereby ORDERED that:

1. The Report and Recommendation is APPROVED and ADOPTED;

2. Plaintiff's Motion for Summary Judgment is DENIED;

3. Defendant's Motion for Summary Judgment is DENIED; and

4. The matter is REMANDED to the Commissioner for further review to consider whether the new evidence changes the ALJ's determination in the domain of interacting and relating to others, and for an explanation of the ALJ's adverse credibility finding.

BY THE COURT:

S/Gene E.K. Pratter
GENE E.K. PRATTER
United States District Judge